UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

BUSREL INC., )
 )
    Plaintiff, )
 )
    v. ) Case No. 1:20-cv-01767
 )
JULIE DOTTON; KRP HOLDINGS, LLC; )
SBM HOLDINGS, LLC; JONATHAN )
CANNON; SEAN GAUTHIER; NEW )
ENGLAND DEVELOPMENT CORP.; and )
MONTROSE CAPITAL, LLC, )
 )
    Defendants. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST NEDC AND
AWARDING DAMAGES**
(Doc. 170)

Plaintiff Busrel Inc. ("Plaintiff") brings this action against Julie Dotton ("Ms. Dotton"), KRP Holdings, LLC ("KRP"), SBM Holdings, LLC ("SBM"), Jonathan Cannon ("Mr. Cannon"), Sean Gauthier ("Mr. Gauthier"), New England Development Corp. ("NEDC"), and Montrose Capital, LLC ("Montrose Capital") (collectively, "Defendants"), alleging that Defendants improperly retained $7,950,000 of Plaintiff's payment after Plaintiff and KRP agreed to cancel a contract whereby KRP would supply Plaintiff with personal protective equipment ("PPE").

Plaintiff is represented by Judith A. Archer, Abigail Fay Schwarz, and Victoria Vance Corder. Mr. Cannon and SBM are represented by David Bolton. Mr. Gauthier is self-represented. Montrose Capital and NEDC are not represented. *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 116 n.8 (2d Cir. 2023) ("A corporation may not appear in federal court *pro se*, and default may enter against a corporate defendant that fails to defend itself in the action by retaining counsel.").

## I.     Procedural History.

Plaintiff filed a Complaint against Ms. Dotton, KRP, and SBM on December 2, 2020. (Doc. 1.) On May 4, 2022, the court entered partial judgment in favor of Plaintiff against SBM in the amount of $2,750,000. (Doc. 78.) Plaintiff filed an Amended Complaint on June 9, 2022, against Mr. Cannon, Ms. Dotton, Mr. Gauthier, KRP, Montrose Capital, NEDC, and SBM. (Doc. 87.) He alleged claims against NEDC for unjust enrichment (Count IV) and conversion (Count VI).

On November 1, 2022, the court granted in part and denied in part Plaintiff's motion for default judgment, awarding Plaintiff damages against Ms. Dotton and KRP jointly and severally on its breach of contract and fraudulent inducement claims, (Doc. 115), and entered partial final judgment in favor of Plaintiff against these Defendants on December 16, 2022, in the amount of $7,950,000 plus $1,811,293.15 in prejudgment and postjudgment interest. (Doc. 127.)

On November 4, 2022, Mr. Gauthier and Montrose Capital filed an answer to the Amended Complaint and asserted crossclaims against Mr. Cannon, Ms. Dotton, KRP, NEDC, and SBM. (Doc. 118.) NEDC answered the crossclaims, but not the Amended Complaint, on November 17, 2022. (Doc. 122.)

The court granted in part and denied in part Mr. Cannon's and NEDC's motions to dismiss the claims asserted against them on January 13, 2023. (Doc. 130.) Thereafter, NEDC did not participate in discovery nor secure substitute counsel after its previous counsel withdrew. On June 16, 2023, Plaintiff applied for an Entry of Default against NEDC, (Doc. 148), and the Clerk of Court filed an Entry of Default on July 11, 2023, pursuant to Fed. R. Civ. P. 55(a). (Doc. 151.)

Pending before the court is Plaintiff's motion for default judgment against NEDC under Fed. R. Civ. P. 55(b)(2) filed on November 22, 2023, on its conversion and unjust enrichment claims for $7,950,000 or, alternatively, $2,750,000. (Doc. 170.) On February 23, 2024, the court issued a text order to show cause as to why default judgment should not be entered against NEDC, requested NEDC to submit briefing within fourteen days, and advised that the court would issue an entry of default judgment against NEDC absent

2

compelling circumstances if it failed to comply. (Doc. 181.) No further filings have been received from NEDC as of the date of this Opinion and Order.

## II. Findings of Fact.

The following findings of fact are derived from the Amended Complaint's allegations, which are taken as true.[1]

Plaintiff is a Canadian company and was an official provider of PPE during the COVID-19 pandemic to the provinces of Quebec and Alberta. SBM is a limited liability company that is incorporated under the laws of Wyoming and has a mailing address in New York. NEDC is a business incorporated under the laws of Vermont with its principal place of business at Mr. Cannon's home address in New York. At all relevant times, Mr. Cannon was the managing director and sole owner of SBM and the president, vice-president, secretary, and sole owner of NEDC. Mr. Cannon controls these entities' bank accounts.

On April 14, 2020, Plaintiff entered into a contract with Ms. Dotton and KRP to purchase two million NIOSH N95 masks and ten million SMS 3, 3-ply masks in exchange for payment of $8,200,000 USD (the "Bill of Sale"). On April 15, 2020, in connection with the Bill of Sale, the parties entered into an escrow agreement (the "Escrow Agreement") whereby Plaintiff would send $8,200,000 to SBM's counsel David Bolton[2] (the "Escrow Agent").

Plaintiff wired $8,200,000 to the Escrow Agent on April 15, 2020. On April 17, 2020, the Escrow Agent released the $8,200,000 payment to a Citibank account owned by SBM pursuant to Ms. Dotton's instructions. SBM and NEDC were not parties to the Bill of Sale. Ms. Dotton did not inform Plaintiff that its money was released to SBM. Mr.

---

[1] *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (observing "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true").

[2] Mr. Cannon's and SBM's counsel in this lawsuit, David Bolton, is the Escrow Agent identified in the Escrow Agreement. Attorney Bolton is likely to be called as a witness in this proceeding. *See* New York Rule of Professional Conduct 3.7.

Cannon transferred $2,750,000 from SBM's account to NEDC on April 20, 2020. After the money reached NEDC's account, Mr. Cannon "used the money as if it were his own" by transferring it to his family members, other NEDC bank accounts, and other companies, rather than procuring PPE for Plaintiff. (Doc. 87 at 9, ¶ 39.)

On April 21, 2020, Ms. Dotton represented to Plaintiff, "We can refund your money and part ways . . . I'm working out the refund with them now[,]" and "[w]e are refunding you. We can't meet your timeframe[.]" *Id.* at 10, ¶ 41 (internal quotation marks omitted). The parties agreed to cancel the Bill of Sale, and KRP agreed to refund Plaintiff's money.

One day later, Mr. Cannon disbursed Plaintiff's funds in the following manner: $50,000 to "VWA Advisors"; $42,924 to "Woods Oviatt"; and $88.89 to "Optimal Health[.]" *Id.* ¶¶ 45-46 (internal quotation marks omitted). On April 23, 2020, Mr. Cannon wired $600,000 of Plaintiff's money to Montrose Capital. None of these transfers were for the purpose of procuring PPE.

Mr. Cannon also made the following disbursements from SBM's bank account pursuant to Ms. Dotton's directions: $100,000 of Plaintiff's money to VWA Advisors on May 1, 2020; $1,695 to "General Corp Svces[]" on May 4, 2020; $200,000 to VWA Advisors and $600,000 to Montrose Capital and Mr. Gauthier on May 11, 2020; and $200,000 to VWA Advisors, $1,600,000 to Montrose Capital, and $10,000 to Woods Oviatt Gilman on May 19, 2020. *Id.* at 12, ¶¶ 55, 57, 60. He used Plaintiff's money to wire $250,000 to Montrose Capital and $100,000 to VWA Advisors for unknown purposes on May 28, 2020. After receiving the transfers from Mr. Cannon, Mr. Gauthier wired Plaintiff's funds to Ms. Dotton's family members, employees of her company, her creditors, and his personal bank account, such as paying a $1,400,000 debt to "Five Star Bank" for an "Applied Science Group/Settlement[.]" *Id.* at 14, ¶ 68 (internal quotation marks omitted). None of these transfers were for the purpose of procuring PPE.

On June 17, 2020, Mr. Cannon and SBM transferred $350,000 of Plaintiff's money to Mr. Gauthier and Montrose Capital. That same day, Plaintiff received a payment of $250,000 from Montrose Capital.

In total, Mr. Cannon used Plaintiff's funds to disburse approximately $2,750,000 to NEDC, $64,000 to his family members, and $61,000 to himself. Mr. Gauthier and Montrose Capital received $3,400,000, and he disbursed approximately $238,000 to his family members and $100,000 to himself.

Plaintiff neither received any PPE for the $8,200,000 it paid, nor obtained a refund of its outstanding $7,950,000 payment, despite its considerable efforts to do both, or either, or otherwise prevent Defendants from simply taking its money. NEDC never returned any of the $2,750,000 of Plaintiff's funds that it received and used for its and Mr. Cannon's benefit. NEDC did not answer the Amended Complaint, respond to discovery requests, perform any discovery itself, or seek to find substitute counsel. Its principal, Mr. Cannon, asserted his Fifth Amendment privilege in response to discovery requests directed to him about NEDC and his and NEDC's receipt and use of Plaintiff's money.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

Under Fed. R. Civ. P. 55, obtaining a default judgment against a party is a two-step process. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* (footnote omitted).

Before entering a default judgment, the court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law[.]" *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Because a defendant who fails to answer or

otherwise defend a complaint is "deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability[,]" *id.* at 81 n.1, in conducting its liability analysis, the court is "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Id.* at 84 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* This inquiry is also twofold: the court must first "determin[e] the proper rule for calculating damages" on the particular claim. *Id.* The court then "assess[es] [the] plaintiff's evidence supporting the damages to be determined[.]" *Id.* "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Regardless of the evidence presented, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.") (footnote omitted).

### B. Whether Plaintiff is Entitled to a Default Judgment on Its Conversion Claim.

#### 1. Whether NEDC Is Liable for Conversion.

"Conversion is [1] 'any unauthorized exercise of dominion . . . over property by

one who is not the owner of the property [and] [2] which interferes with . . . a superior possessory right.'" *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 43 Fed. App'x 456, 458 (2d Cir. 2002) (second, third, and fifth alterations in original) (quoting *Hart v. City of Albany*, 706 N.Y.S.2d 535, 536 (3d Dep't 2000)). Money may be the subject of a conversion action, provided that "there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (N.Y. App. Div. 1990). "Thus, conversion [of money] occurs when funds designated for a particular purpose are used for an unauthorized purpose[.]" *Lemle v. Lemle*, 939 N.Y.S.2d 15, 18 (N.Y. App. Div. 2012).

New York courts have found that money is "specifically identifiable" "when the funds at issue in an action for the conversion of money constitute a 'specific sum,' one that is 'determinate,' and reflects an 'ascertained' amount," even in circumstances where the money has been commingled with other funds. *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 50 (N.Y. App. Div. 2022) (citation and internal quotation marks omitted) (finding that a $96,000 payment plaintiffs deposited into their attorney's account was "specifically identifiable" because the money transferred first to the attorney and then to defendant was ascertained and undisputed).[3]

After the Escrow Agent released Plaintiff's $8,200,000 payment to SBM's corporate account, unbeknownst to Plaintiff, Mr. Cannon disbursed these funds to individuals and entities, including a specific sum of $2,750,000 to NEDC's account. "The limited transfers [of the payment]—which essentially amount to [two] transfer[s] from [P]laintiff[,] [first by the Escrow Agent to SBM and second by Mr. Cannon to NEDC]—did not render the funds at issue no longer specifically identifiable." *Id.* at 51. Any

---

[3] *See also Grocery Delivery E-Servs. USA, Inc. v. Flynn*, 160 N.Y.S.3d 249, 251 (N.Y. App. Div. 2022) ("The commingling of the fund with [non-party] Mariner's general corporate accounts does not render the conversion claim insufficient, because it was defendant and Mariner who commingled the funds[.]"); *Petrone v. Davidoff Hutcher & Citron, LLP*, 54 N.Y.S.3d 25, 27-28 (N.Y. App. Div. 2017) (finding that the fact that a "specific $100,000 fund . . . designated for the benefit of the children" was "commingled with other money in the escrow account does not preclude a cause of action for conversion").

7

potential commingling of Plaintiff's payment with SBM's general corporate accounts prior to the transfer of the $2,750,000 to NEDC also "does not render the conversion claim [against NEDC] insufficient, because it was [D]efendant [Mr. Cannon] . . . who commingled the funds" and controlled both SBM's and NEDC's accounts. *Grocery Delivery E-Servs. USA, Inc. v. Flynn*, 160 N.Y.S.3d 249, 251 (N.Y. App. Div. 2022); *see also City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 5200220, at *7 (S.D.N.Y. Mar. 29, 2021) ("[I]t is generally sufficient for a plaintiff to identify a specific transfer of funds that were misappropriated and trace those funds to a knowing recipient.").

Assuming *arguendo* that SBM had lawful possession or control over Plaintiff's funds when they were disbursed to NEDC, Plaintiff's funds were designated for use in purchasing PPE, and NEDC was not authorized to use them for a different purpose. NEDC, however, "used the money as if it were [its] own[,]" and the transferred funds were wired to Mr. Cannon's family members and others instead of used for purchasing PPE for Plaintiff. *See Lemle*, 939 N.Y.S.2d at 18 ("[C]onversion occurs when funds designated for a particular purpose are used for an unauthorized purpose[.]"). By retaining Plaintiff's specifically identifiable funds after Plaintiff was entitled to a full refund, NEDC "exercised unauthorized dominion" over those funds in interference with Plaintiff's rights. *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 459 (N.D.N.Y. 2021); *see also Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 352 (S.D.N.Y. 2011) (finding plaintiff entitled to a default judgment for conversion against defendants who received funds through a different defendant). Accordingly, Plaintiff has established its right to judgment in its favor on its conversion claim against NEDC.

The court thus GRANTS Plaintiff's motion for default judgment as to NEDC's liability for conversion in the amount of $2,750,000.

### 2. Whether NEDC is Jointly and Severally Liable for Conversion with Mr. Cannon, Mr. Gauthier, and Montrose Capital.

Plaintiff contends the court should find NEDC jointly and severally liable for conversion with Mr. Cannon, Mr. Gauthier, and Montrose Capital. Under New York law, "[a] court has discretion to impose joint and several liability when defendants are

collaborating or closely related in the commission of a tort." *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 172 (S.D.N.Y. 2010); *see also Hecht v. City of New York*, 467 N.Y.S.2d 187, 190 (1983) ("When multiple tort-feasors are found to be liable for damages, . . . [l]iability is said to be 'joint and several', meaning that each party is individually liable to plaintiff for the whole of the damage[.]").

"Under New York law, joint and several liability is a question of law that is not related to the factual apportionment of fault among defendants." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 59-60 (2d Cir. 2014) (concluding the district court did not err in finding a defendant "jointly and severally liable for conversion based on concerted action[]" under New York law).

"If plaintiffs seek to impose joint and several liability, it would not be inconsistent to hold one defendant liable but not others." *Aponte v. Clinton St. Pizza Inc.*, 2022 WL 1154369, at *5 (S.D.N.Y. Apr. 19, 2022). As a result, Second Circuit courts "in cases asserting joint and several liability [have] . . . proceeded to decide the default judgment motion while other parties are litigating." *Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 154 (E.D.N.Y. 2019).

Apart from its motion for default judgment against NEDC, Plaintiff has moved for summary judgment against Mr. Cannon, Mr. Gauthier, and Montrose Capital on multiple claims including its conversion claim. (Doc. 172.) Plaintiff contends that these Defendants also improperly retained or transferred Plaintiff's funds intended for PPE purchasing.

By working with others to deprive Plaintiff of its refund, NEDC is jointly and severally liable for conversion with Mr. Cannon, Mr. Gauthier, and Montrose Capital, pending determination of those Defendants' liability.

### 3. Whether Plaintiff is Entitled to Compensatory Damages Against NEDC on Its Conversion Claim.

For a conversion claim, "the general rule with regard to the measure of damages . . . is to award the value of the property at the time of conversion, together with interest[.]" *Will of Rothko*, 392 N.Y.S.2d 870, 874 (N.Y. App. Div. 1977), *aff'd sub nom.*

*Matter of Rothko's Est.*, 372 N.E.2d 291 (N.Y. 1977); *see Harlem Cap. Ctr., LLC v. Rosen & Gordon, LLC*, 44 N.Y.S.3d 36, 39 (N.Y. App. Div. 2016) ("A claim for conversion accrues when the conversion or taking occurred[.]"). Plaintiff transferred $8,200,000 to Defendants for purchasing PPE on April 15, 2020, which the Escrow Agent released into SBM's account two days later. Mr. Cannon then wired $2,750,000 to NEDC, and Plaintiff later received a $250,000 payment from Montrose Capital's account. NEDC had possession of Plaintiff's property in the amount of $2,750,000 at the time of its conversion. For this reason, the court finds NEDC liable for $2,750,000, which the court awards to Plaintiff as compensatory damages for its conversion claim.

### 4. Prejudgment Interest.

As this is a diversity action, "issues bearing on prejudgment interest are governed by New York law[,]" *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000), which entitles Plaintiff to an award of prejudgment interest at the rate of nine percent per annum. *See Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012) ("Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory.") (citation and internal quotation marks omitted); N.Y.C.P.L.R. § 5004(a) ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute[.]"). This prejudgment interest shall be computed as follows:

> from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). Plaintiff is entitled to an award of prejudgment interest for this claim at the rate of nine percent per annum commencing on April 21, 2020, the date that the refund was first promised.

### 5. Postjudgment Interest.

Plaintiff is also entitled to postjudgment interest under 28 U.S.C. § 1961(a). *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)

("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). The award of postjudgment interest shall be calculated in accordance with § 1961(a). *See* 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.") (footnote omitted).

### C. Whether Plaintiff is Entitled to a Default Judgment on Its Unjust Enrichment Claim.

In the alternative, Plaintiff asks this court to enter a default judgment against NEDC for unjust enrichment. Under New York law, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff[.]" *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (N.Y. 2012) (citation omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail. . . . [It] is not available where it simply duplicates, or replaces, a conventional contract or tort claim[.]" *Id.* Rather, it is "an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010).

As Plaintiff's unjust enrichment claim "simply duplicates[]" its conversion claim, *Corsello*, 18 N.Y.3d at 790, and because Plaintiff has an adequate remedy at law, unjust enrichment is not available. The court therefore DENIES Plaintiff's motion for default judgment on its unjust enrichment claim against NEDC and DISMISSES this claim.

## CONCLUSION

For the reasons set forth above, the court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment, (Doc. 170), as follows:

1. Conversion claim: GRANTED. Judgment is entered in Plaintiff's favor and against NEDC, jointly and severally with Mr. Cannon, Mr. Gauthier, and Montrose Capital, subject to a determination of their liability, in the amount of $2,750,000 USD in compensatory damages, with prejudgment interest accruing at a rate of nine percent per annum from April 21, 2020, to the date of this Opinion and Order, and postjudgment interest accruing from the date of judgment at the applicable federal rate.
2. Unjust Enrichment claim: DENIED.

SO ORDERED.

Dated this 27th day of August, 2024.

Christina Reiss, District Judge
United States District Court