UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSREL INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01767 |
| | ) |
| JULIE DOTTON; KRP HOLDINGS, LLC; | ) |
| SBM HOLDINGS, LLC; JONATHAN | ) |
| CANNON; SEAN GAUTHIER; NEW | ) |
| ENGLAND DEVELOPMENT CORP.; and | ) |
| MONTROSE CAPITAL, LLC, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST MONTROSE CAPITAL, LLC, AND AWARDING DAMAGES**
(Doc. 203)

Plaintiff Busrel Inc. ("Plaintiff") brings this action against Julie Dotton ("Ms. Dotton"); KRP Holdings, LLC ("KRP"); SBM Holdings, LLC ("SBM"); Jonathan Cannon ("Mr. Cannon"); Sean Gauthier ("Mr. Gauthier"); New England Development Corp. ("NEDC"); and Montrose Capital, LLC ("Montrose Capital") (collectively, "Defendants"), alleging that Defendants improperly retained $7,950,000 of Plaintiff's payment after Plaintiff and KRP agreed to cancel a contract whereby KRP would supply Plaintiff with personal protective equipment ("PPE").

Plaintiff is represented by Judith A. Archer, Esq., Abigail Fay Schwarz, Esq., and Victoria Vance Corder, Esq. Mr. Cannon and SBM are represented by David Bolton, Esq. Ms. Dotton and Mr. Gauthier are self-represented. Montrose Capital and NEDC are not represented. *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 116 n.8 (2d Cir. 2023) ("A corporation may not appear in federal court *pro se*, and default may enter against a corporate defendant that fails to defend itself in the action by retaining counsel.").

## I. Procedural History.

Plaintiff filed a Complaint against Ms. Dotton, KRP, and SBM on December 2, 2020. (Doc. 1.) On May 4, 2022, the court entered partial judgment in favor of Plaintiff against SBM in the amount of $2,750,000. (Doc. 78.) Plaintiff filed an Amended Complaint on June 9, 2022, against Mr. Cannon, Ms. Dotton, Mr. Gauthier, KRP, Montrose Capital, NEDC, and SBM. (Doc. 87.) It alleged claims against Montrose Capital for aiding and abetting fraudulent inducement (Count VII), unjust enrichment (Count IV), and conversion (Count VI).

Plaintiff requested an entry of default against Mr. Gauthier and Montrose Capital on August 17, 2022. (Doc. 108). The clerk entered default as to these defendants on August 18, 2022. Mr. Gauthier and Montrose Capital moved to vacate the default, which the court granted on October 24, 2022. (Doc. 114). On November 4, 2022, Mr. Gauthier and Montrose Capital, who were then represented by counsel, answered the Amended Complaint and asserted crossclaims against Mr. Cannon, Ms. Dotton, KRP, NEDC, and SBM. (Doc. 118.) On December 8, 2023, Plaintiff moved for summary judgment against Defendants Mr. Cannon, Mr. Gauthier, and Montrose Capital. (Doc. 172.)

Mr. Gauthier's and Montrose Capital's counsel moved to withdraw from the case, and on January 4, 2024, the court granted the motion. (Doc. 175.) No substitute counsel appeared for Montrose Capital, and on June 24, 2024, the court issued an order advising Montrose Capital that failure to obtain counsel within twenty days may result in entry of default. (Doc. 185.) On August 30, 2024, the court directed the clerk of court to enter default against Montrose Capital because it "may not appear without an attorney[.]" *Busrel Inc. v. Dotton*, 2024 WL 4043650, at *2 (W.D.N.Y. Aug. 30, 2024). It also granted summary judgment against Mr. Cannon and Mr. Gauthier in Plaintiff's aiding and abetting fraudulent inducement and conversion claims and in its request to pierce the corporate veils of SBM, NEDC, and Montrose Capital, holding, in relevant part, that Mr. Gauthier is the alter ego of Montrose Capital.[1]

---

[1] Although this Opinion and Order focuses on the procedural history related to Montrose Capital, the court notes that it has now entered judgments against each of Montrose Capital's

2

The clerk entered a default against Montrose Capital on October 2, 2024. (Doc. 191.) Pending before the court is Plaintiff's January 21, 2025 motion for default judgment against Montrose Capital under Fed. R. Civ. P. 55(b)(2) on its aiding and abetting fraudulent inducement, conversion, and unjust enrichment claims for $7,950,000 plus prejudgment and postjudgment interest, or in the alternative for $3,400,000 plus pre- and post-judgment interest. (Doc. 203.) Montrose Capital did not oppose this motion.

## II.   Findings of Fact.

The following findings of fact are derived from the Amended Complaint's allegations, which are taken as true.[2]

Plaintiff is a Canadian company and was an official provider of PPE during the COVID-19 pandemic to the provinces of Quebec and Alberta. Montrose Capital is a limited liability company that is incorporated under the laws of Michigan and has its principal place of business at the home address of Mr. Gauthier, its resident agent and sole member. Mr. Gauthier, at the relevant times, was Montrose Capital's sole owner and controlled the company and its bank account.

In April 2020, Mr. Gauthier and an individual named Andrew Moar introduced Nicolas Giguère, an independent sales agent for Plaintiff, to Ms. Dotton of KRP for the purposes of procuring PPE. Mr. Gauthier held himself out to Plaintiff as KRP's head of logistics. Thereafter, Mr. Giguère and Ms. Dotton exchanged text messages, emails, and calls to discuss the PPE, Ms. Dotton's suppliers, and price quotes. During conversations in early April 2020, Ms. Dotton represented that she could procure large amounts of PPE for Plaintiff "due to her connections." (Doc 87 at 4, ¶ 16.) Specifically, Ms. Dotton

---

codefendants. On November 1, 2022, the court granted Plaintiff's motion for a default judgment against Ms. Dotton and KRP on its breach of contract and fraudulent inducement claims. (Doc. 115.) On August 27, 2024, the court granted Plaintiff's motion for a default judgment against NEDC on its conversion claim. (Doc. 187.)

[2] *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (observing "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true").

represented that she had a special relationship with a supplier in China that owned over one thousand companies and was state-owned, implying that Plaintiff would have access to a reliable supply of quality PPE if it purchased the PPE through Ms. Dotton and KRP. She represented to Mr. Giguère that her prices were not as low as other suppliers because her supply came from state-owned factories in China but reassured him that her relationships were legitimate.

Ms. Dotton's representations regarding Chinese factories and her connections to them were false and were part of a scheme to induce Plaintiff to enter into a multi-million-dollar contract to purchase PPE, which Ms. Dotton could not deliver and never intended to deliver. Mr. Gauthier knew, when he introduced Mr. Giguère to Ms. Dotton, that Ms. Dotton and KRP were not PPE suppliers and that Ms. Dotton needed cash to purportedly invest and generate money to pay off her debts. Mr. Gauthier knew of Ms. Dotton's fraudulent scheme, and Ms. Dotton forwarded her correspondence with Plaintiff to Mr. Gauthier throughout the course of contractual negotiations. On April 14, 2020, in reliance on Ms. Dotton's representations, Plaintiff entered into a contract with Ms. Dotton and KRP to purchase two million NIOSH N95 masks and ten million SMS 3, 3-ply masks in exchange for payment of $8,200,000 USD (the "Bill of Sale"). On April 15, 2020, in connection with the Bill of Sale, the parties entered into an escrow agreement (the "Escrow Agreement") whereby Plaintiff would send $8,200,000 to an Escrow Agent.

Relying on Ms. Dotton's representations and promises, Plaintiff wired $8,200,000 to the Escrow Agent on April 15, 2020. On April 17, 2020, the Escrow Agent released the $8,200,000 payment to a Citibank account owned by SBM pursuant to Ms. Dotton's instructions. SBM was not a party to the Bill of Sale. Ms. Dotton did not inform Plaintiff that its money was released to SBM. Mr. Cannon transferred $2,750,000 from SBM's account to NEDC on April 20, 2020. After the money reached NEDC's account, Mr. Cannon "used the money as if it were his own" by transferring it to his family members, other NEDC bank accounts, and other companies, rather than procuring PPE for Plaintiff. *Id.* at 9, ¶ 39.

On April 21, 2020, Ms. Dotton represented to Plaintiff, "We can refund your money and part ways . . . I'm working out the refund with them now[,]" and "[w]e are refunding you. We can't meet your timeframe." *Id.* at 10, ¶ 41 (internal quotation marks omitted) (first alteration in original). The parties agreed to cancel the Bill of Sale, and KRP agreed to refund Plaintiff's money.

One day later, Mr. Cannon disbursed Plaintiff's funds in the following manner: $50,000 to "VWA Advisors[,]" $42,924 to "Woods Oviatt[,]" and $88.89 to "Optimal Health[.]" *Id.* ¶¶ 45-46 (internal quotation marks omitted). On April 23, 2020, Mr. Cannon wired $600,000 of Plaintiff's money to Montrose Capital. None of these transfers were for the purpose of procuring PPE. None of them benefitted Plaintiff in any way.

Mr. Cannon also made the following disbursements from SBM's bank account pursuant to Ms. Dotton's directions: $100,000 of Plaintiff's money to VWA Advisors on May 1, 2020; $1,695 to "General Corp Svces[]" on May 4, 2020; $200,000 to VWA Advisors and $600,000 to Montrose Capital and Mr. Gauthier on May 11, 2020; and $200,000 to VWA Advisors, $1,600,000 to Montrose Capital, and $10,000 to Woods Oviatt Gilman on May 19, 2020. *Id.* at 12, ¶¶ 55, 57, 60 (internal quotation marks omitted). He again used Plaintiff's money to wire $250,000 to Montrose Capital and $100,000 to VWA Advisors for unknown purposes on May 28, 2020.

After receiving the transfers from Mr. Cannon, Mr. Gauthier wired Plaintiff's funds to Ms. Dotton's family members, employees of her company, her creditors, and his personal bank account, such as paying a $1,400,000 debt to "Five Star Bank" for an "Applied Science Group/Settlement[.]" *Id.* at 14, ¶ 68 (internal quotation marks omitted). None of these transfers were for the purpose of procuring PPE. None of them benefitted Plaintiff in any way.

On June 17, 2020, Mr. Cannon and SBM transferred $350,000 of Plaintiff's money to Mr. Gauthier and Montrose Capital. On or about June 17, 2020, Plaintiff received a payment of $250,000 from Montrose Capital.

On July 10, 2020, Mr. Cannon told Plaintiff that it would be repaid pursuant to a payment plan as follows: "I have been advised starting the week of July 20th we can pay

5

500k for two weeks, then we can pay $1,000,000 per week until the rest is paid up." (Doc. 87 at 16, ¶ 81) (internal quotation marks omitted). On July 22, 2020, the proposed week for the first payment of $500,000 USD, Plaintiff's representative emailed Mr. Cannon to ask when Plaintiff should expect to receive the wired money. Mr. Cannon responded the following day and stated: "We are providing you with all the documentation on the financial transaction that allows KRP to refund your monies. Due to COVID everything is being delayed." *Id.* at 17, ¶ 83 (internal quotation marks omitted). Mr. Cannon informed Plaintiff's representative that a line of credit would be extended to KRP by an unidentified source on either July 27 or July 28 and that Plaintiff would receive a "letter of intent" following the extension of the line of credit. *Id.* (internal quotation marks omitted). Mr. Cannon's representations that KRP was receiving a line of credit to repay Plaintiff proved inaccurate as Plaintiff did not receive payments according to the repayment plan.

On July 31, 2020, Mr. Cannon emailed Plaintiff's representative to falsely represent that Mr. Cannon was waiting for a transaction with a French bank to be completed so that KRP could pay Plaintiff. This email was drafted by Mr. Gauthier and then forwarded by Ms. Dotton to Mr. Cannon to send to Plaintiff. Over the following months, Mr. Cannon and Ms. Dotton continued to make representations to Plaintiff about forthcoming repayments, but these repayments did not occur.

In total, Mr. Gauthier and Montrose Capital received $3,400,000. Of that amount, Mr. Gauthier disbursed approximately $238,000 to his family members and $100,000 to himself. Plaintiff neither received any PPE for the $8,200,000 it paid, nor obtained a refund of its outstanding $7,950,000 payment, despite its considerable efforts to do both. Other than the payment of $250,000, Mr. Gauthier and Montrose Capital never returned any of the $3,400,000 of Plaintiff's funds they wrongfully received.

### III.  Conclusions of Law and Analysis.

#### A.  Standard of Review.

Under Fed. R. Civ. P. 55, obtaining a default judgment against a party is a two-step process. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also Vt.*

*Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* (footnote omitted).

Before entering a default judgment, the court is "required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) (internal quotation marks omitted) (quoting *City of New York*, 645 F.3d at 137). Because a defendant who fails to answer or otherwise defend a complaint is "deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability[,]" *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009), in conducting its liability analysis, the court is "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Id.* at 84 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* This inquiry is also twofold: the court must first "determin[e] the proper rule for calculating damages" on the particular claim. *Id.* The court then "assess[es] [the] plaintiff's evidence supporting the damages to be determined[.]" *Id.* "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund,*

7

*Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Regardless of the evidence presented, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.") (footnote omitted).

### B. Whether Plaintiff is Entitled to a Default Judgment on Its Aiding and Abetting Fraudulent Inducement Claim.

#### 1. Whether Montrose Capital Is Liable for Aiding and Abetting Fraudulent Inducement.

"To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'" *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (quoting *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)) (alteration in original). "In assessing whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004).

A "nexus" must exist "between the primary fraud, [the alleged aider and abettor's] knowledge of the fraud[,] and what [the alleged aider and abettor] did with the intention of advancing the fraud's commission[.]" *Krys*, 749 F.3d at 127 (first, second, and third alterations in original) (citation and internal quotation marks omitted). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner*, 459 F.3d at 295

8

(internal quotation marks omitted) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (N.Y. App. Div. 2003)).

The court has granted Plaintiff's motion for default judgment against Ms. Dotton and KRP for fraudulent inducement, which established the first element of aiding and abetting fraud. *Busrel Inc. v. Dotton*, 2022 WL 16559446, at *13 (W.D.N.Y. Nov. 1, 2022) ("Plaintiff's reliance on Ms. Dotton's and KRP's misrepresentations resulted in injury consisting of a loss of $7,950,000 it was fraudulently induced to pay.").

During Ms. Dotton's and KRP's fraudulent inducement of Plaintiff, Mr. Gauthier, who exercised total control over Montrose Capital, introduced Ms. Dotton to Plaintiff's representative as a provider of PPE, despite knowing that Ms. Dotton and KRP were not PPE suppliers. Mr. Gauthier and Montrose Capital were thus participants in the fraudulent scheme from its inception. Mr. Cannon wired Plaintiff's money to Montrose Capital, and, in turn, Mr. Gauthier used the money to pay himself and Ms. Dotton's family members, employees of her company, and her creditors instead of using it to procure PPE.

Mr. Gauthier and his alter ego, Montrose Capital, knew that none of the people and entities who received Plaintiff's funds were entitled to them. After Ms. Dotton agreed to refund Plaintiff for its PPE order, Mr. Gauthier worked with Ms. Dotton and Mr. Cannon to falsely represent that repayment was forthcoming. Accordingly, Montrose Capital knew about the fraud and substantially assisted in it. *See Busrel Inc.*, 2024 WL 4043650, at *10 (finding, on summary judgment, that Mr. Gauthier aided and abetted fraudulent inducement by introducing Ms. Dotton to Plaintiff to procure PPE without any logistics or shipping experience, initiating undisclosed fund transfers for non-PPE purposes, and making false representations as to repayment).

The court thus GRANTS Plaintiff's motion for default judgment as to Montrose Capital's liability for aiding and abetting fraudulent inducement.

> **2. Whether Plaintiff is Entitled to Compensatory Damages Against Montrose Capital on Its Aiding and Abetting Fraudulent Inducement Claim.**

"Damages for fraud are calculated according to the 'out-of-pocket' rule and must reflect 'the actual pecuniary loss sustained as the direct result of the wrong[.]'" *Norcast S.ar.l. v. Castle Harlan, Inc.*, 48 N.Y.S.3d 95, 97 (N.Y. App. Div. 2017) (*quoting Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). "Damages may only properly compensate plaintiffs for 'what they lost because of the fraud, not . . . for what they might have gained[.]'" *Id.* (quoting *Lama Holding Co.*, 668 N.E.2d at 1373) (alteration in original).

On April 15, 2020, Plaintiff paid $8,200,000 to Ms. Dotton and KRP for PPE that it never received. It was promised a full refund on April 21, 2020, but only received a payment of $250,000. Plaintiff is thus entitled to $7,950,000 in compensatory damages for its aiding and abetting fraudulent inducement claim, representing the amount of money that was wrongfully deprived. *See Busrel Inc.*, 2022 WL 16559446, at *6 (noting that "Ms. Dotton and KRP owe Plaintiff a refund of at least $7,950,000 USD, by their own admissions").

### C. Whether Plaintiff is Entitled to a Default Judgment on Its Conversion Claim.

#### 1. Whether NEDC Is Liable for Conversion.

"Conversion is [1] 'any unauthorized exercise of dominion . . . over property by one who is not the owner of the property [and] [2] which interferes with . . . a superior possessory right.'" *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 43 Fed. App'x 456, 458 (2d Cir. 2002) (second, third, and fifth alterations in original) (quoting *Hart v. City of Albany*, 706 N.Y.S.2d 535, 536 (3d Dep't 2000)). Money may be the subject of a conversion action, provided that "there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (N.Y. App. Div. 1990). "Thus, conversion [of money] occurs when funds designated for a particular purpose are used for an unauthorized purpose[.]" *Lemle v. Lemle*, 939 N.Y.S.2d 15, 18 (N.Y. App. Div. 2012).

New York courts have found that money is "specifically identifiable" "when the funds at issue in an action for the conversion of money constitute a 'specific sum,' one

10

that is 'determinate,' and reflects an 'ascertained' amount," even in circumstances where the money has been commingled with other funds. *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 50 (N.Y. App. Div. 2022) (citation and internal quotation marks omitted) (finding that a $96,000 payment plaintiffs deposited into their attorney's account was "specifically identifiable" because the money transferred first to the attorney and then to defendant was ascertained and undisputed).[3]

After the Escrow Agent released Plaintiff's $8,200,000 payment to SBM's corporate account, unbeknownst to Plaintiff, Mr. Cannon disbursed these funds to individuals and entities, including specific sums of $600,000 and $1,600,000 to Montrose Capital's account. Mr. Gauthier then disbursed this money to individuals and entities that included himself and Ms. Dotton's creditors; this included the payment of a $1,400,000 debt. Of the $3,400,000 in disbursements it received from Plaintiff's $8,200,000 payment, Montrose Capital used none for PPE procurement and only refunded $250,000 to Plaintiff.

"The limited transfers [of the payment]—which essentially amount to [two] transfer[s] from [P]laintiff[,] [first by the Escrow Agent to SBM and second by Mr. Cannon to Montrose Capital]—did not render the funds at issue no longer specifically identifiable." *Id.* at 51. Any potential commingling of Plaintiff's payment with SBM's general corporate accounts prior to the transfers to Montrose Capital would not preclude Plaintiff's conversion claim because "it is generally sufficient for a plaintiff to identify a specific transfer of funds that were misappropriated and trace those funds to a knowing recipient." *City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 5200220, at *7 (S.D.N.Y. Mar. 29, 2021).

---

[3] *See also Grocery Delivery E-Servs. USA, Inc. v. Flynn*, 160 N.Y.S.3d 249, 251 (N.Y. App. Div. 2022) ("The commingling of the fund with [non-party] Mariner's general corporate accounts does not render the conversion claim insufficient, because it was defendant and Mariner who commingled the funds[.]"); *Petrone v. Davidoff Hutcher & Citron, LLP*, 54 N.Y.S.3d 25, 27-28 (N.Y. App. Div. 2017) (finding that the fact that a "specific $100,000 fund . . . designated for the benefit of the children" was "commingled with other money in the escrow account does not preclude a cause of action for conversion").

Assuming *arguendo* that Mr. Cannon had lawful possession or control over Plaintiff's funds when they were disbursed to Montrose Capital, Plaintiff's funds were designated for use in purchasing PPE, and Montrose Capital was not authorized to use them for a different purpose. Montrose Capital, however, retained the funds without refunding Plaintiff or using them to purchase PPE, and the transferred funds were wired to Ms. Dotton's creditors and others for non-PPE purposes. *See Lemle*, 939 N.Y.S.2d at 18 ("[C]onversion occurs when funds designated for a particular purpose are used for an unauthorized purpose[.]"). It did so knowing these activities were fraudulent and unlawful.

By retaining Plaintiff's specifically identifiable funds after Plaintiff was entitled to a full refund, Montrose Capital "exercised unauthorized dominion" over those funds in interference with Plaintiff's rights. *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 459 (N.D.N.Y. 2021); *see also Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 352 (S.D.N.Y. 2011) (finding plaintiff entitled to a default judgment for conversion against defendants who received funds through a different defendant); *Am. Fin. Servs. Grp. v. Treasure Bay Gaming & Resorts, Inc.*, 2000 WL 815894, at *12 (S.D.N.Y. June 23, 2000) ("[E]ven if [a third-party defendant] merely retained a part of the fund without applying it properly, this action amounted to a constructive conversion."). Accordingly, Plaintiff has established its right to judgment in its favor on its conversion claim against Montrose Capital.

The court thus GRANTS Plaintiff's motion for default judgment as to Montrose Capital's liability for conversion.

### 2. Whether Plaintiff is Entitled to Compensatory Damages Against Montrose Capital on Its Conversion Claim.

For a conversion claim, "the general rule with regard to the measure of damages . . . is to award the value of the property at the time of conversion, together with interest[.]" *Will of Rothko*, 392 N.Y.S.2d 870, 874 (N.Y. App. Div. 1977), *aff'd sub nom. Matter of Rothko's Est.*, 372 N.E.2d 291 (N.Y. 1977); *see Harlem Cap. Ctr., LLC v. Rosen & Gordon, LLC*, 44 N.Y.S.3d 36, 39 (N.Y. App. Div. 2016) ("A claim for

conversion accrues when the conversion or taking occurred[.]"). Plaintiff transferred $8,200,000 to Defendants for purchasing PPE on April 15, 2020, which the Escrow Agent released into SBM's account two days later. SBM and Mr. Cannon then disbursed a total of $3,400,000 to Montrose Capital on April 23, May 11, May 19, May 28, and June 17 of 2020. *See* Doc. 203-10 at 22 (Mr. Gauthier's deposition testimony answering "yes" to whether Montrose received a total of $3.4 million to make payments on Ms. Dotton's or her companies' behalf). On June 17, Plaintiff received a $250,000 payment from Montrose Capital's account. Montrose Capital had possession of Plaintiff's property in the amount of $3,400,000 as of June 17, 2020, and retained at least $315,000,000 of those funds without using them for their authorized purpose. For this reason, the court finds Montrose Capital liable for $315,000,000, which the court awards to Plaintiff as compensatory damages for its conversion claim.

### D.    Whether Plaintiff is Entitled to a Default Judgment on Its Unjust Enrichment Claim.

In the alternative, Plaintiff asks this court to enter a default judgment against Montrose Capital for unjust enrichment. Under New York law, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff[.]" *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (N.Y. 2012) (citation omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail. . . . [It] is not available where it simply duplicates, or replaces, a conventional contract or tort claim[.]" *Id.* Rather, it is "an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010).

As Plaintiff's unjust enrichment claim "simply duplicates[]" its conversion claim, *Corsello*, 18 N.Y.3d at 790, and because Plaintiff has an adequate remedy at law, unjust enrichment is not available. The court therefore DENIES Plaintiff's motion for default judgment on its unjust enrichment claim against Montrose Capital and DISMISSES this claim.

### E. Whether Montrose Capital is Jointly and Severally Liable with Mr. Cannon and Mr. Gauthier.

Plaintiff contends the court should find Montrose Capital jointly and severally with Mr. Cannon and Mr. Gauthier for aiding and abetting fraudulent inducement and conversion. Under New York law, "[a] court has discretion to impose joint and several liability when defendants are collaborating or closely related in the commission of a tort." *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 172 (S.D.N.Y. 2010); *see also Hecht v. City of New York*, 467 N.Y.S.2d 187, 190 (N.Y. 1983) ("When multiple tort-feasors are found to be liable for damages, . . . [l]iability is said to be 'joint and several[,]'[] meaning that each party is individually liable to plaintiff for the whole of the damage[.]").

"[T]hose who aid and abet or conspire in tortious conduct are jointly and severally liable with other participants in the tortious conduct, regardless of the degree of their participation or culpability in the overall scheme." *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1536 (S.D.N.Y. 1985). "Under New York law, joint and several liability is a question of law that is not related to the factual apportionment of fault among defendants." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 59-60 (2d Cir. 2014) (concluding the district court did not err in finding a defendant "jointly and severally liable for conversion based on concerted action[]" under New York law).

The court has already found that Mr. Cannon and Mr. Gauthier are liable for aiding and abetting fraudulent inducement and for conversion because they "worked with Ms. Dotton to defraud Plaintiff, to distribute Plaintiff's funds, and to fraudulently evade Plaintiff's refund request so that Plaintiff would postpone legal action while they fraudulently transferred Plaintiff's funds beyond its reach." *Busrel*, 2024 WL 4043650, at *13. Montrose Capital, which was solely owned by and controlled by Mr. Gauthier, committed overt acts and wrongfully retained and used Plaintiff's funds in furtherance of the same fraudulent scheme. It collaborated with the other Defendants in the commission of torts. Under New York Law, Montrose Capital, Mr. Cannon, and Mr. Gauthier are jointly and severally liable for aiding and abetting fraudulent inducement and conversion.

14

### F. Prejudgment and Postjudgment Interest.

As this is a diversity action, "issues bearing on prejudgment interest are governed by New York law[,]" *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000), which entitles Plaintiff to an award of prejudgment interest at the rate of nine percent per annum. *See Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012) ("Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory.") (citation and internal quotation marks omitted); N.Y. C.P.L.R. § 5004(a) ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute[.]"). This prejudgment interest shall be computed as follows:

> from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). On its conversion claim, Plaintiff is entitled to an award of prejudgment interest for this claim at the rate of nine percent per annum commencing on June 17, 2020, the date Montrose Capital received the last installment of the $3,400,000 of Plaintiff's money that it improperly retained and failed to use to procure PPE, to the date of this Opinion and Order. On its aiding and abetting fraudulent inducement claim, Plaintiff is entitled to an award of prejudgment interest at the rate of nine percent per annum from April 21, 2020, the date Plaintiff was first promised a refund of its payment, to the date of this Opinion and Order.

Plaintiff is also entitled to postjudgment interest under 28 U.S.C. § 1961(a). *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). The award of postjudgment interest shall be calculated in accordance with § 1961(a). *See* 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal

15

Reserve System, for the calendar week preceding the date of the judgment.") (footnote omitted).

## CONCLUSION

For the reasons set forth above, the court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment, (Doc. 203), as follows:

1. Aiding and Abetting Fraudulent Inducement claim: GRANTED. Judgment is entered in Plaintiff's favor and against Montrose Capital, jointly and severally with Mr. Cannon and Mr. Gauthier, in the amount of $7,950,000 USD in compensatory damages, with prejudgment interest accruing at a rate of nine percent per annum from April 21, 2020, to the date of this Opinion and Order, and postjudgment interest accruing from the date of judgment at the applicable federal rate.

2. Conversion claim: GRANTED. Judgment is entered in Plaintiff's favor and against Montrose Capital, jointly and severally with Mr. Cannon, Mr. Gauthier, and NEDC, in the amount of $315,000,000 USD in compensatory damages, with prejudgment interest accruing at a rate of nine percent per annum from June 17, 2020, to the date of this Opinion and Order, and postjudgment interest accruing from the date of judgment at the applicable federal rate.

3. Unjust Enrichment claim: DENIED.

SO ORDERED.

Dated this 13th day of March, 2025.

Christina Reiss, District Judge
United States District Court